UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-10005-ALTMAN/Reid

**GERALD FLETCHER**,

    *Plaintiff*,

v.

**UNITED GROUND EXPRESS, INC.**,

    *Defendant*.

_____/

## ORDER

The Plaintiff has filed a Motion to Remand (the "Motion") [ECF No. 10]—which, after careful review, we now **GRANT**.[1]

### THE FACTS

On December 14, 2022, the Plaintiff, Gerald Fletcher, filed a Complaint in state court, alleging that his employer, United Ground, had (1) discriminated against him on the basis of his age and disability, in violation of the Florida Civil Rights Act of 1992, FLA. STAT. § 760.01, *et seq.* ("FCRA"), and (2) retaliated against him, in violation of the Florida Workers' Compensation Law, FLA. STAT. § 440.205 ("FWCA"). *See generally* Complaint [ECF No. 1-3].

Fletcher, who was seventy-five years old when he filed his Complaint, was employed by the Defendant as a "customer service and ramp associate" at the "Key West airport location." *Id.* ¶ 13, 16. Fletcher alleges that Christine Long, his manager, made discriminatory and harassing comments to him about his age. *Id.* ¶¶ 18–20. Fletcher adds that, on January 4, 2021, while performing his normal

---

[1] That Motion is now ripe for resolution. *See* United Ground Express, LLC's Response in Opposition (the "Response") [ECF No. 15]; Plaintiff's Reply in Support of its Motion to Remand (the "Reply") [ECF No. 20].

work duties, he was caught on a piece of luggage as he was placing the bag onto a conveyer belt, "causing him to fall and be dragged and injuring his head, legs, right knee, right arm, and right shoulder." *Id.* ¶ 21. According to the Complaint, this work-related injury left Fletcher disabled and substantially limited his ability to do his job. *Id.* ¶ 22. As a result, he asked Long for medical assistance in the form of workers'-compensation benefits. *Id.* ¶ 23. On January 8, 2021, shortly after Fletcher brought the injury to Long's attention, he was terminated. *Id.* ¶ 24. Fletcher claims that he was fired by the Defendant "on account of discrimination due to his age and disability and in retaliation for making claims for or requesting access to workers' compensation benefits regarding his work-related injury[.]" *Id.* ¶ 27.

Fletcher seeks back wages from the date of the adverse employment action to the date of the filing of his Complaint, "an equal amount of back wages as liquidated damages," "front wages," and "injunctive relief prohibiting Defendant from wrongfully subjecting its employees to adverse employment actions[.]" *Id.* at 18. In the Civil Cover Sheet that's attached to his Complaint, Fletcher indicated that his damages totaled $30,001–$50,000. *Id.* at 4.

The Defendant, United Ground, removed this case here on January 20, 2023. *See* Notice of Removal [ECF No. 1]. In its filings in our Court, United Ground says that it removed the case under the provisions of 28 U.S.C. §§ 1441 and 1446, *see* Removal Status Report [ECF No. 5] at 2, and it maintains that we may exercise subject-matter jurisdiction over the case because (1) the parties are completely diverse and (2) the amount in controversy is "likely to exceed the $75,000 threshold," *see* Notice of Removal at 4. Because we disagree with this last proposition, we now remand the case back to state court.

## THE LAW

A federal court should remand to state court any case that has been improperly removed. *See* 8 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of

2

establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

The Constitution provides that the "judicial power shall extend to . . . controversies . . . between citizens of different states." U.S. CONST. art. III, § 2. "This language, however, does not automatically confer diversity jurisdiction upon the federal courts. Rather, it authorizes Congress to do so and, in doing so, to determine the scope of the federal courts' jurisdiction within constitutional limits." *Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010).

Congress has authorized the federal district courts to exercise original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a). This type of jurisdiction (what we call diversity jurisdiction) requires *complete* diversity: Every plaintiff must be diverse from every defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." § 1332(c)(1). The party invoking federal jurisdiction must establish that the amount in controversy exceeds $75,000. *See* § 1332(a).

Congress may expand or restrict the district courts' diversity jurisdiction within the limits prescribed by the Constitution. *See Hertz Corp.*, 559 U.S. at 84 (noting that Congress "determine[s] the

3

scope of the federal courts' jurisdiction within constitutional limits"). For example, before 1948, the diversity statute limited jurisdiction to "suits of a civil nature at common law or in equity." *Ankenbrandt v. Richards*, 504 U.S. 689, 700 (1992). In 1948, however, Congress "amended the diversity statute . . . to replace the law/equity distinction with the phrase 'all civil actions[.]'" *Ibid.* Congress has also steadily raised the amount-in-controversy requirement. *See Snyder v. Harris*, 394 U.S. 332, 339–40 (1969) ("[T]he congressional purpose in steadily increasing through the years the jurisdictional amount requirement . . . was to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction.").

In evaluating whether the "particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (cleaned up); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

## ANALYSIS

This case involves two claims of discrimination under the FCRA and one claim of retaliation under the FWCA. We'll start with the easy one: The parties *agree* that the FWCA claim should be severed and remanded back to state court. *See* Response at 3–4 ("[United Ground] specifically request[s] that the Court sever and remand [the FWCA] claim to state court."); Reply at 2 ("Defendant has conceded this point and Plaintiff rests on his argument and Defendant's concession."). Nor could they have argued otherwise. Under § 440.205 of the FWCA, "[n]o employer shall threaten to discharge, intimidate or coerce any employee by reason of such employee's valid claim for compensation or an attempt to claim compensation under the Worker's Compensation Law." And federal law provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State

4

may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). The Eleventh Circuit "has not explicitly ruled" on whether a worker's-compensation-retaliation claim under § 440.205 "arises under" Florida's Worker's Compensation Law. *Berry v. Tampa Sportservice, Inc.*, 2009 WL 1922240, at *3 (M.D. Fla. July 2, 2009) (Kovachevich, J.). But it *has* held that, for purposes of *Alabama law*, a retaliatory-discharge claim arises under *that state's* worker's-compensation laws. *See Reed v. Heil Co.*, 206 F.3d 1055, 1059–60 (11th Cir. 2000) ("Under the plain meaning of section 1445(c), claims raised under [the Alabama retaliatory-discharge cause of action] arise under Alabama's workers' compensation laws.").

And, applying *Reed*, district courts in our Circuit have uniformly held that a Florida retaliatory-discharge claim under § 440.205 *likewise* arises under Florida's Worker's Compensation Law. *See Rex v. Fla. Leg.*, 2013 WL 6891787, at *1 (N.D. Fla. Dec. 20, 2013) (Hinkle, J.) ("Florida district courts, including this one, have applied *Reed* to retaliation claims under the Florida workers' compensation statute."); *Pascuales v. Bentley Roofing, L.L.C.*, 2020 WL 13389835, at *2 (S.D. Fla. Jan. 6, 2020) (Dimitrouleas, J.) ("[A] claim under Florida Statute § 440.205 for retaliation for use of the Florida Workers' Compensation Law is a claim 'arising under the workmen's compensation laws' of Florida[.]"); *Johnston v. Morton Plant Mease Healthcare, Inc.*, 2007 WL 570078, at *2 (M.D. Fla. Feb. 20, 2007) (Lazzara, J.) ("Even though [a] modicum of a distinction exists between the case law of [Florida and Alabama], it is not enough to tip the scales in favor of a finding that retaliatory discharge claims do not 'arise under' the workers' compensation laws of Florida."). Given *Reed*'s holding, we agree with our colleagues that an FWCA retaliation claim "aris[es] under the workmen's compensation laws" of Florida. Fletcher's retaliation claim is, therefore, nonremovable and must be remanded.

But that doesn't resolve the more complicated question of what to do with Fletcher's FCRA claims. Although the federal circuit courts haven't entered this fray, *most* federal judges around the country have held that §§ 1441(c) and 1445(c), when read together, *require* a remand of *the whole case* in

5

situations like ours—*viz.*, where one claim is nonremovable and the other arises solely under our diversity jurisdiction. *See, e.g.*, *Jackson v. Wal-Mart Stores Tex., LLC*, 925 F. Supp. 2d 810, 813–15 (N.D. Tex. 2013) ("[E]ven if the Court were inclined to consider that only the workers' compensation claim, and not the entire case, was improperly removed, the Court does not have the power to sever and remand only the section 451.001 claim. Section 1445(c), like section 1441(a), provides no such authority . . . . [I]f a court has federal question jurisdiction over one claim in a case and Congress has made another independent claim in the same case nonremovable, the court may sever and remand only the nonremovable claim. Nowhere, however, does [section 1441(a)] grant a court authority to sever and remove a single claim made nonremovable by statute if the remaining claims arise under state law only and the defendant removed the case on *diversity* grounds . . . . Because the Court has no authority under federal law to sever nonremovable claims in a diversity action, the Court must remand the entire action in this case." (emphasis in original)); *Burris v. Zale Del., Inc.*, 2009 WL 3762987, at *3 (W.D. Mo. Nov. 10, 2009) ("Defendant requests that plaintiff's retaliatory discharge claim brought under Mo. Rev. Stat. § 287.780 be severed from the remaining claims and remanded to state court. However, severance of a non-removable state claim is permissible only if the district court is exercising federal question jurisdiction. *See* 28 U.S.C. § 1441(c) (2009). There is no statutory provision that would allow a district court having jurisdiction based solely on diversity to sever a non-removable claim and adjudicate the remaining state claims."); *Mayfield v. Shelley's Elec. Serv. Inc.*, 582 F. Supp. 3d 1103, 1109 (N.D. Ala. 2022) (Danella, Mag. J.) ("Stated simply, along with § 1441(c), *Reed* supports severance-and-remand where the case includes a federal claim and a nonremovable state law claim. But, in the absence of a federal claim, the plain language of § 1441(c) does not apply. Here, because the Mayfields' complaint does not include any federal claim for relief, there is no basis for federal question jurisdiction, and no basis for severance-and-remand pursuant to § 1441(c). Importantly, Congress has not enacted an analogous severance-and-remand provision for those situations—like this case—in

6

which a defendant has removed a case that invokes diversity jurisdiction and that includes a statutorily nonremovable claim. To be clear, nothing in § 1441(c) prohibits severance-and-remand in those situations, but nothing in the plain language allows it either." (cleaned up)); *Formosa v. Lowe's Home Ctrs., Inc.*, 806 F. Supp. 2d 1181, 1189 (N.D. Ala. 2011) (Blackburn, C.J.) ("When faced with removed cases containing worker's compensation claims, several district courts in Alabama have chosen to remand the entire case rather than sever and remand the nonremovable worker's compensation claim, particularly where the only basis for federal jurisdiction was diversity jurisdiction, as here."); *Bryant v. Wausau Underwriters, Ins. Co.*, 2008 WL 1808325, at *2 (M.D. Ala. Apr. 21, 2008) ("*Reed* cannot be interpreted as authority for severing and remanding worker's compensation claims in cases that are removed under § 1332 (diversity) because *Reed* involved a case removed under § 1331 (federal question)."); *Williams v. CNH Am., LLC*, 542 F. Supp. 2d 1261, 1266–67 (M.D. Ala. 2008) (Fuller, J.) ("Because fraudulent joinder is only relevant to claims that are removed based on diversity jurisdiction, even if *Reed* stood for the proposition that CNH suggests, it would not be controlling here.").

Although the Eleventh Circuit hasn't opined on this question, we agree with what appears to be the majority view. As these other district courts have recognized, neither § 1445(c) nor § 1441(c) authorizes a district court, when left with nothing but *diversity* claims, to sever and remand *only* the nonremovable state-law claim. *See* § 1441(c) (not mentioning diversity claims at all); § 1445(c) ("A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."). And "[t]his silence" in § 1441(c) is significant because the statute unambiguously authorizes district courts to sever and remand nonremovable claims from *federal-question* causes of action. It says:

(1) If a civil action includes—

(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

7

>> (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,
>
>> the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed.

§ 1441(c). Given that § 1441(c) thus *explicitly* describes the circumstances in which a district court may sever and remand a nonremovable claim—and because that description *excludes* the situation we have here—we think this "silence" in § 1441(c) "is dispositive[.]" *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020); *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1262 (11th Cir. 2020) ("Where Congress knows how to say something but chooses not to, its silence is controlling." (quoting *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015))); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *Savage Servs. Corp. v. United States*, 25 F.4th 925, 935 (11th Cir. 2022) (refusing to read into the Oil Pollution Act a waiver of sovereign immunity because "Congress . . . knows how to waive sovereign immunity when it wants to"). As one federal court in Alabama has said, we "will not read out of § 1441(c) the distinction between claims rooted in federal question and diversity jurisdiction." *Steel v. Viscofan USA, Inc.*, 2017 WL 253960, at *3 (M.D. Ala. Jan. 19, 2017) (Borden, Mag. J.).

Fletcher's two FCRA claims arise *solely* under our diversity jurisdiction. Given our plain-language reading of §§ 1441(c) and 1445(c)—and our straightforward application of the contextual

canon (*expressio unius est exclusio alterius*)[2]—we would remand Fletcher's *entire case* on this basis alone.[3]

But there are two *additional* reasons for our view that Fletcher's FCRA claims should be remanded.

*First*, we reiterate the well-settled proposition that "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005). And, in its effort to establish the amount in controversy, our Defendant has

---

[2] A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) (describing the canon of *expressio unius* to mean that the "expression of one thing implies the exclusion of others"); STATUTORY CONSTRUCTION § 47:23 (7th ed. updated Nov. 2021) ("*Expressio unius* instructs that, where a statute designates a form of conduct, the manner of its performance and operation, and the persons and things to which it refers, courts should infer that all omissions were intentional exclusions.").

[3] We acknowledge that *some* federal judges have taken a different approach. For judges following this minority view, whether § 1445(c) requires remand of the entire action depends on whether the claim that's *otherwise* removable arises under a state's workers'-compensation laws—even if the otherwise-removable claim is based on diversity jurisdiction alone. *See, e.g.*, *Stassi v. Dollar Tree Stores, Inc.*, 2023 WL 3956168, at *4 (N.D. Ala. June 12, 2023) (severing workers'-compensation claim from state-law tort claims because "the two causes of action for negligence and wantonness do not arise under the workers' compensation laws of Alabama"); *Yates v. Eastdale Apartments Ltd. P'ship*, 2022 WL 3230428, at *2 (M.D. Ala. Aug. 10, 2022) (severing and remanding a worker's-compensation claim, while retaining jurisdiction over tort claims, because "the workers' compensation claim is not inextricably linked to [the plaintiff's] tort claims"). These judges seem to view § 1441(c) as "inapplicable" to our question. *See, e.g.*, *Perdue v. Westpoint Home, Inc.*, 2007 WL 320245, at *4 (N.D. Fla. Oct. 27, 2007) (Smoak, J.) ("Section 1441(c) is inapplicable because it only applies, according to its plain language, when one claim or cause of action involves a federal question under 28 U.S.C. § 1331. Jurisdiction for the claims arising under Florida law in Counts I and II, however, is based solely on diversity of citizenship, not federal question. I therefore find it improper to remand Count I based on § 1441(c) . . . . I lack discretionary authority to remand to state court a claim for which jurisdiction in this Court is proper."); *Climer v. Twin City Fire Ins. Co.*, 2004 WL 1531796, at *5 (N.D. Tex. July 8, 2004) ("Climer's remaining causes of action—for violations of [Texas statutes], and for breach of contract, negligence, tortious interference, and intentional infliction of emotional distress—are only incidentally related to the Texas workers' compensation statutes. The Texas workers' compensation statutes did not create these causes of action and, therefore, they do not come within the ambit of the non-removability provision of § 1445(c).").

But "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989)); *cf. Nken v. Holder*, 556 U.S. 418, 426 (2009) ("[S]tatutory interpretation turns on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))). And, when read together, §§ 1441(c) and 1445(c) *don't* allow us to sever and remand a nonremovable claim while retaining jurisdiction over a claim that arises *solely* under our diversity jurisdiction.

9

failed to show that Fletcher's discrimination claims belong in federal court. Fletcher has made clear, in a sworn filing in state court, that he's seeking *at most* $50,000 in total damages.[4] *See* Complaint at 4. The Defendant tries to supplement this amount with *its own* estimates of what Fletcher's compensatory and punitive damages—plus attorneys' fees—might one day look like. *See* Response at 6–10.

Beginning with attorneys' fees, the Defendant contends that "the potential amount of attorney's fees in this case is likely to be between $40,000 and $50,000, which is a conservative estimate." *Id.* at 8. And (United Ground adds) "the FCRA authorizes the recovery of attorney's fees to a prevailing Plaintiff." *Ibid.* But, as we've said many times, "[w]hen attorneys' fees are recoverable—*either by contract or by statute*—only fees incurred at the time of removal should be included in the amount-in-controversy computation." *Torreyes v. Godiva Chocolatier, Inc.*, 424 F. Supp. 3d 1276, 1282 (S.D. Fla. 2019) (Altman, J.) (emphasis added). As a result, in determining whether the removing defendant has satisfied the amount-in-controversy requirement "at the time of removal," we cannot consider any *future* attorneys' fees the parties *might* incur *after* removal. *Ibid.* And the Defendant—whose burden it was—simply hasn't told us whether, as of the date of removal, the attorneys' fees in this case pushed the amount in controversy over the jurisdictional threshold.

The Defendant also proffers $75,000 as a "conservative estimate of the punitive damages at issue in this case." Response at 10. But, as some of our colleagues have said, that punitive-damage computation is just far too "speculative" to include "as part of the amount in controversy." *Haley v. Envision Physician Servs., LLC*, 2019 WL 13256251, at *3 (S.D. Fla. Nov. 13, 2019) (Moreno, J.); *see also Connally v. Fla. HMA Reg'l Serv. Ctr., LLC*, 2022 WL 92829, at *3 (M.D. Fla. Jan. 10, 2022) (Covington, J.) ("[I]t would be rank speculation for the Court to add an amount of punitive damages to the amount in controversy calculation as no evidence of the actual punitive damages at issue in this case has been

---

[4] *See also* Reply at 3 ("In the action at bar, Plaintiff has suggested in his Civil Cover Sheet damages not exceeding $50,000.").

provided.").

Next, the Defendant "estimates Plaintiff's compensatory damages [for emotional distress] at an amount of $40,000." Response at 7. In support, the Defendant cites *other* cases in which juries have awarded $40,000 (or more) in emotional damages. *See, e.g.*, *ibid.* ("The plaintiff's lost wages do not have to be significant to command a high jury award for emotional damages. For example, in *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1216 (S.D. Fla. 2002) (Goldberg, J.), the jury found for the plaintiff on her claims of unlawful employment discrimination and awarded her $130,500 in emotional pain and mental anguish, despite awarding only $2,000 for lost wages."). Again, however, the party seeking to remove a case based on diversity jurisdiction "bears the burden of establishing the existence of federal jurisdiction by a preponderance of the evidence." *Walcott v. Ferrelgas, Inc.*, 2021 WL 3518204, at *1 (M.D. Fla. Mar. 8, 2021) (Presnell, J.). And, while a defendant *can* "submit[ ] evidence of damages from decisions in comparable cases" to help satisfy its burden, *id.* at *2 (cleaned up), it must still "explain why that amount would be awarded in *this* case," *Bragg v. Suntrust Bank*, 2016 WL 836692, at *2 (M.D. Fla. Mar. 4, 2016) (Covington, J.) (emphasis in original). United Ground doesn't explain why it believes our case is similar to *Bernstein*, nor does it give us any other yardstick by which we can reasonably conclude that the emotional-damages awards from those other cases are at all relevant on our facts. We thus agree with one of our Middle District colleagues who, in a similar context, had this to say about a defendant's efforts to speculate about what a jury might one day award in mental-anguish damages:

> [B]eyond stating that [some cases] [are] analogous to [ours], [the defendant] provides no factual comparison of the emotional state of the plaintiffs. Indeed, [it] provides no evidence at all of [the plaintiff's] emotional distress or suffering. With no background of factual similarity, [d]efendant's contention that damages for emotional distress in FCRA actions routinely exceed $75,000 adds little to the AIC calculus. Thus, [b]ecause [the defendant] can only speculate as to potential compensatory damages, the Court need not consider those damages in its analysis of whether the jurisdictional requirement has been met.

*Quintano v. Fogo De Chao Churrascaria (Orlando) LLC*, 2017 WL 3263101, at *3 (M.D. Fla. Aug. 1, 2017)

11

(Dalton, J.) (quoting *Bragg*, 2016 WL 836692, at *2). As in *Quintano*, our Defendant has offered no evidence about the emotional state of our Plaintiff—nor (it goes without saying) has it compared Fletcher's emotional state to the mental anguish the jury found so compelling in cases like *Bernstein*.

Having decided not to include in our amount-in-controversy calculation *the Defendant's* speculation about the amounts of any future attorneys' fees, emotional damages, or punitive awards, we're left only with the Defendant's estimate of the Plaintiff's potential backpay. Here, though, the Defendant comes up with a number that, for the most part, mirrors much of what the Plaintiff has said. By its own admission, United Ground has "submitted evidence that Plaintiff's back pay from termination to the present totals approximately $40,145." Response at 5. With only this amount leftover, the Defendant hasn't carried its burden of proving that our amount in controversy, more likely than not, exceeds $75,000.

Recall that, in deciding whether the "particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone*, 720 F.3d at 882 (cleaned up); *see also Burns*, 31 F.3d at 1095 ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); *Fowler v. Hertz Vehicles, LLC*, 2007 WL 106563, at *3 (M.D. Fla. Jan. 9, 2007) (Covington, J.) ("Given the fact that removal statutes are strictly construed and any doubts or ambiguities are to be resolved in favor of remand, the Court is bound to resolve any uncertainties in favor of remanding this case to [state court]."). In short, the Defendant, as "the removing party," has "failed to carry its burden of demonstrating that removal was proper." *Fowler*, 2007 WL 106563, at *3.

*Second*, other district courts in our Circuit have remanded similar cases for reasons of judicial economy. In *Hernandez v. Neo Pet Spa, Inc.*, for example (which involved a nonremovable workers'-compensation claim and a variety of other state- and federal-law claims), the plaintiff argued that she

12

"should not be subjected to the risk of inconsistent adjudication if the motive for discharge is simultaneously litigated in federal and state court." 2023 WL 3642085, at *2 (S.D. Fla. May 25, 2023) (Bloom, J.). Judge Bloom agreed, noting that, "although [the Court] has original jurisdiction over the FLSA claims, it is in the interest of both judicial economy and consistent adjudication of the issues to remand all claims to [state court]." *Ibid.* To preserve judicial resources and to avoid any possible inconsistency in the treatment of these related claims, we agree that a remand of the entire action—especially in a case that involves *no* federal questions—is the wisest course here. *See Wingard v. Guillot Textilmaschinen GmbH*, 2008 WL 4368884, at *3 (M.D. Ala. Sept. 23, 2008) (remanding entire case because "severing the workers' compensation claim against [the defendant] would not promote judicial economy").

***

Accordingly, we hereby **ORDER and ADJUDGE** that the Plaintiff's Motion to Remand [ECF No. 10] is **GRANTED**. The case is **REMANDED** to the 16th Judicial Circuit in and for Monroe County, Florida. The Clerk of Court is directed to **CLOSE** this case. All pending deadlines and hearings are **TERMINATED**, and any pending motions, including the Defendant's Motion to Dismiss [ECF No. 14], are **DENIED AS MOOT**.

**DONE AND ORDERED** in the Southern District of Florida on July 10, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record